**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

PRIME HYDRATION, LLC,

     Plaintiff,

v.

LIONEL ANDRES MESSI and MAS+ NEXT
GENERATION BEVERAGE CO.,

     Defendants.

CASE NO.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Prime Hydration LLC ("Prime Hydration"), by and through its undersigned counsel, brings this action to enjoin and seek other relief for the unlawful conduct of Defendants Lionel Andres Messi ("Mr. Messi") and Mas+ Next Generation Beverage Co. ("Mas+ Co.," who, together with Messi, are hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff hereby alleges as follows:

## NATURE OF THE ACTION

1.      Defendant Mas+ Co. engages in the sale and distribution of the hydration/sports drink known as MÁS+ BY MESSI (the "MÁS+ BY MESSI Product"). Defendants have advertised the MÁS+ BY MESSI Product by publishing and promulgating to distributors, retailers and the consuming public false and materially misleading statements regarding Mr. Messi's involvement in the creation and development of the MÁS+ BY MESSI Product. Defendants knew the statements were false and materially misleading when the statements were made. Despite that knowledge, they published them anyway knowing that the statements would make distributers,

retailers and consumers significantly more likely to purchase the MÁS+ BY MESSI Product – to the detriment of Prime Hydration.

2.      More specifically, the website owned and operated by Mas+ Co. states that world famous soccer player, Lionel Messi, was directly involved in the entire process of creating, developing, designing and naming the MÁS+ BY MESSI Product. That website even describes Mr. Messi as "The Founder" of that brand and product. These statements are demonstrably false as confirmed by Mr. Messi's own words in a sworn declaration recently submitted in ongoing litigation.

3.      Mas+ Co. is publishing and continuing to publish intentionally false and misleading marketing statements for the purpose of commercially promoting the MÁS+ BY MESSI Product. Mas+ Co. was formed by and is one of the Mark Anthony Group of companies ("Mark Anthony").

4.      On information and belief, Mark Anthony was solely responsible for not only forming Mas+ Co. but also creating, designing, developing and naming the MÁS+ BY MESSI Product.

5.      This is an action seeking damages and injunctive relief for: (i) false advertising against Defendants under the Lanham Act 15 U.S.C. §§ 1116(a) and 1125(a)(1)(B); (ii) deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.; and (iii) misleading advertising in violation of Fla. Stat. § 817.41 *et seq*., as detailed herein.

2

## THE PARTIES

6.      Prime Hydration LLC is a Delaware Limited Liability Corporation having a principal place of business in Louisville, Kentucky.

7.      On information and belief, Defendant Lionel Messi is an individual with dual Argentine and Spanish citizenship, residing in the United States in Fort Lauderdale, Florida. Mr. Messi alleges to be "THE FOUNDER" of Mas+ Co. and the MÁS+ BY MESSI Product, as recounted at https://www.masbymessi.com/pages/founders-story. Mr. Messi alleges to have personally participated in, overseen, and been directly involved in the creation, design, development, testing, naming and marketing of the MÁS+ BY MESSI Product.

8.      On information and belief, Defendant Mas+ Co. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 167 N Green St Ste 600A, Chicago, IL, 60607. Mas+ Co. has sold its products, and continues to sell its products, to consumers in the State of Florida and this District.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1367.

10.     This Court has jurisdiction over the claims in this action that arise under the laws of the State of Florida pursuant to § 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

11.     This Court has personal jurisdiction over Mr. Messi because he is a resident of the State of Florida. Further, Mr. Messi has purposely availed himself of the benefits of doing business in the State of Florida, being employed and generating income in the State through his association

with Inter Miami CF. In addition, Mr. Messi has committed tortious acts within, and directed to, the State of Florida, and has caused injury to Prime Hydration in this State.

12.     This Court has personal jurisdiction over Mas+ Co. because, *inter alia*, Mas+ Co. (i) is licensed to conduct and actually does conduct business in the State of Florida and this District; (ii) committed tortious actions within, and directed to this State; (iii) purposefully directed improper and unlawful activity at this State by launching, distributing, marketing, and/or selling products in the State in connection with the false advertising at issue; (iv) has entered into contracts with entities based in the State of Florida and this District, and/or (v) caused injury to Prime Hydration in this State.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District. In addition, Mr. Messi is a resident of Fort Lauderdale, Florida.

## STATEMENT OF FACTS

### Prime Hydration's Introduction and Success in the Hydration Market

14.     In January 2022, Prime Hydration launched its first products, a series of hydration drinks featuring different flavors. Prime Hydration was founded by a team including, amongst others, social media influencers Logan Paul and Olajide Olayinka Williams Olatunji p/k/a KSI.

15.     Prime Hydration used the power of social media to reach a massive audience quickly. As former boxing rivals teaming up to collaborate on Prime Hydration, Logan Paul and KSI leveraged their large fanbases and social media followers, along with their creative marketing tactics, to catapult Prime Hydration to success as one of the fastest growing beverage brands of all time, generating over 1.2 billion dollars in revenue during 2023 alone.

16.     Another aspect of Prime Hydration's success came from its business collaborations with numerous star athletes and professional sports organizations, including many football (soccer) clubs.  For example, Prime Hydration partnered with Arsenal F.C. and then signed deals to become the "Official Hydration Partner" of FC Barcelona and FC Bayern Munich, among several other football clubs. Further, Prime Hydration has now collaborated with the LA Dodgers, LA Lakers, Toronto Raptors, as well as with entire sports leagues, including the UFC and WWE, and with world-famous elite athletes of several sports, including two-time NBA champion Kevin Durant, three-time Superbowl champion Patrick Mahomes, six-time MLB All-Star Aaron Judge, and seven-time NHL All-Star Auston Matthews. Prime Hydration created limited edition bottles for each of these unique collaborations

17.     Since its launch, Prime Hydration has amassed an international following of millions of consumers and has sold more than 1.5 billion bottles of its hydration drinks.

18.     Prime Hydration's sales rocketed it to a top brand in the hydration/sports drink category trailing competitors like Gatorade, Powerade and BodyArmor.

**The Creation and Development of the MÁS+ BY MESSI Product**

19.     On information and belief, after recognizing the massive success of Prime Hydration, Mark Anthony through Mas+ Co. set out to develop a product that directly competes with Prime Hydration's hydration/sports drink product.

20.     On information and belief, founded in 1972, Mark Anthony began as a wine importing business, before it later created and launched some new categories of alcoholic products, including White Claw hard seltzer and Mike's Hard Lemonade, among other alcoholic brands. In the past decade, Mark Anthony's White Claw hard seltzer achieved notable success, with several other companies developing their own competing hard seltzer products in subsequent years.

21.     By 2023, news outlets were reporting that Generation Z (loosely defined as those born between 1997 and 2010) is "drinking less" alcohol. For example, a June 2023 article in Forbes, entitled *Why GenZ Is Drinking Less and What This Means For The Alcohol Industry* (https://www.forbes.com/sites/claraludmir/2023/06/27/why-genz-is-drinking-less-and-what-this-means-for-the-alcohol-industry/), explained that the "non-alcoholic category is expanding" with "millennials and Gen-Z driving the demand for alternatives to alcoholic beverages." That article noted that:

> Gen-Z drink on average 20% less than millennials, who also drink less than the previous generation, mainly because of an increased awareness of the dangers and effects of alcohol and the rise of health-consciousness as a lifestyle. In fact, an overwhelming 86% of Gen-Z consumers believe that their mental health is as significant as their physical health when considering drinking alcohol.

22.     As another example, on November 1, 2023, the Cleveland Clinic published an article entitled *Is Generation Z Drinking Less?* (with the sub-headline beginning: "The answer is 'yes'") (https://health.clevelandclinic.org/why-gen-z-is-drinking-less). That article states that a "study published in 2020 found that alcohol abstinence is increasingly common among Gen Z," with researchers finding that "28% of college students in 2018 reported that they abstained from alcohol" (compared to 20% back in 2002); and "[y]oung adults not in college were even more likely to avoid alcohol," with nearly "30% of this group in 2018 [reporting] that they did not drink beer, wine or spirits" (compared to 24% in 2002). The article further noted that, earlier in 2023, "music venues holding concerts catering to Gen Z reported significant drops in alcohol sales during the events."

23.     On information and belief, Mark Anthony follows marketplace trends to cater to the desires of consumers.  Mark Anthony has been aware for several years now that trends have

been changing, with alcohol sales declining and younger generations less inclined to purchase and consume alcohol.

24.     In December 2023, an article from Business Insider reported that *White Claw is introducing an alcohol-free version of its hard seltzer*, describing this move as coming at a time when "some young people turn away from drinking alcohol."  The article even quoted Tyler Gray, Mark Anthony's Chief Story Officer, as stating: "The rules of drinking are changing – and a lot of beverage companies aren't keeping up."  The article also noted that White Claw became the top-selling hard seltzer "amid a social media craze," and that a "viral parody video in 2019 heralded a 'White Claw summer,' which helped sales surge to $627 million – but they've lost their fizz since then." That last wording included a hyperlink to an earlier Business Insider article, dated July 28, 2021, entitled *Hard-Seltzer Sales are Tanking*.

25.     Against this background, Mark Anthony decided to enter the market of non-alcoholic beverage alternatives. Accordingly, on information and belief, Mark Anthony decided to create a non-alcoholic division of its company, which is now known as Mas+ Co.

26.     On information and belief, Mark Anthony wanted to recreate the earlier "social media craze" and virality it had experienced with White Claw, but with a new product and beverage brand that had never been associated with alcohol.

27.     On information and belief, Mark Anthony viewed the massive success of Prime Hydration as a roadmap or blueprint toward developing its own new competing hydration beverage brand. For example, Prime Hydration quickly became successful in large part due to being constantly marketed online by its two initial brand ambassadors, Logan Paul and KSI, who both have significant fanbases and followings among younger consumers -- especially on social media.

28.     On information and belief, Mark Anthony set out to copy Prime Hydration's success, by finding its own brand ambassador who would likewise connect with younger consumers.

29.     To begin its efforts, Mark Anthony had to choose a celebrity or athlete to be associated with its new beverage. Mark Anthony chose Lionel Messi, the world-famous footballer from Argentina with over 500 million followers on Instagram alone and approximately 625 million followers across all social media.

30.     Mr. Messi is the all-time leading goal-scorer for his home team of Argentina, which he led to become World Cup Champions in 2022. Further, some have argued that Mr. Messi is the greatest soccer player ever.

31.     On information and belief, another important aspect in favor of Mark Anthony choosing Mr. Messi is that, in July 2023, Mr. Messi agreed to play in Major League Soccer (MLS) with Inter Miami. Mr. Messi's arrival to play soccer in the U.S. was widely seen as helping to raise the profile of MLS both within the U.S. and abroad. Indeed, in October 2024, Inter Miami's co-president compared Mr. Messi to NBA legend Michael Jordan, saying "he has changed everything" for MLS, with the Goal.com article (https://www.goal.com/en/lists/changed-everything-inter-miami-chief-hails-lionel-messi-impact-mls-compares-nba-legend-michael-jordan/blt07f24130ccba8883#csdc9ebcb50676abe8) reporting on these statements asserting: "Every game that he graces sparks a scramble for tickets, with plenty of A-list guests eager to watch him in action."

32.     Moreover, given that the 2026 FIFA World Cup is set to be held across North America, on information and belief, Mark Anthony knew that 2024 would be an ideal opportunity

to announce and launch a new beverage brand and partnership with Mr. Messi, to capture the excitement and attention that the sport of soccer and Mr. Messi are bringing to the United States.

33.    There are only about 10 cities in the United States that will host World Cup games in 2026, and one of these is Mr. Messi's adopted hometown of Miami. On information and belief, Mark Anthony strongly believed that acquiring Mr. Messi to serve as its brand ambassador for this new product and brand would help to ensure the success of that product and brand.

34.    In or around October 20, 2023, Mark Anthony incorporated a company in Delaware under the name Beverage Company of America Inc.  On information and belief, Mr. Messi was not an owner of Beverage Company of America Inc. when it was formed.

35.    In or around February 2024, Beverage Company of America Inc. was renamed Mas+ New Beverage Company. On information and belief, Mr. Messi was not an owner of Beverage Company of America Inc.  when its name was changed to Mas+ New Beverage Company.

36.    On information and belief, between late 2023 and early 2024, Mark Anthony began staffing Mas+ Co., whose initial efforts were directed to obtaining a celebrity and social media spokesperson, who eventually became Mr. Messi.

37.    Around this same time, Mark Anthony hired Tyler Gray as Chief Story Officer, David Parsons as Global Head of Design and Rishi Daing as Executive Vice President to further advance Mas+ Co. and guide the false public narrative surrounding that company and its eventual MÁS+ BY MESSI Product.

38.    As part of those false narrative efforts, Mark Anthony and Mas+ Co. prepared and delivered a presentation to Mr. Messi and/or Mr. Messi's advisors relative to the business opportunity associated with Mas+ Co. and the MÁS+ BY MESSI Product. Mr. Messi was merely

9

an attendee during this presentation where the concepts, brand, packaging and/or flavors had already been developed by Mas+ Co. or its affiliates.

39.      Contrary to the false narrative being marketed by Mas+ Co. and Mr. Messi, Mr. Messi has now declared under oath that "Mark Anthony designed the packaging for MÁS+ BY MESSI prior to [Mr. Messi's] meeting toward the end of 2023" and that he "was not involved in the creation or design of the aesthetic appearance of the bottle or the label…" Mr. Messi concludes, again under oath, that he has "no knowledge as to the specifics of that design process." (**Exhibit A**, Declaration of Lionel Messi with certified translation, pp. 9-10.)

40.      Mr. Messi has recently publicly re-confirmed as part of ongoing litigation that "the first time [Mr. Messi] even saw the [MAS+ BY MESSI] packaging was on December 1, 2023, after it was designed" by Mark Anthony. (**Exhibit F**, September 9, 2025 Court Filing.)

### The Launch and Marketing of the MÁS+ BY MESSI Product

41.      The MÁS+ BY MESSI Product was launched and sold to the consuming public on or about June 4, 2024 in and around Miami, Florida by Mas+ Co. As of the date of this filing, the MÁS+ BY MESSI Product is available to the consuming public throughout the entire United States, including in Florida.

42.      In marketing its MÁS+ BY MESSI Product, Mas+ Co. knowingly created and disseminated a false advertising campaign, in active partnership with and the full approval of Mr. Messi.

43.      For example, Mas+ Co. and Mr. Messi decided that it was not enough for Mr. Messi to merely be a brand ambassador and celebrity athlete spokesperson for the MÁS+ BY MESSI Product. Instead, they decided to create a story publicly portraying Mr. Messi as "The Founder"

of the entire concept, company, brand and product with Mr. Messi originating the idea, and that he "went to work on" a drink over many years.

44.     On information and belief, Mas+ Co. knew that it needed to portray comprehensive and wide-ranging involvement from Mr. Messi because distributors, retailers and/or consumers would not rush to purchase a brand-new hydration drink merely developed by unknown Mas+ Co. or its affiliate Mark Anthony, which was an alcohol-focused company. Rather, on information and belief, Mas+ Co. believed that distributors, retailers and/or consumers highly value authenticity, and would only be enticed to buy the new product if it were portrayed as Lionel Messi's idea where Mr. Messi "went to work on a drink of [his] own."

45.     On information and belief, Mas+ Co. also believed that distributors, retailers and/or customers considering buying the MÁS+ BY MESSI Product would value the fact that it was the creation of and developed by Mr. Messi after years of effort.

46.     This false advertising campaign has reached multiple social media channels, has been the subject of worldwide reporting, and remains the focus of the advertising on the website of Mas+ Co. (www.masbymessi.com) (the "Mas+ Website") as well as other various advertising and marketing channels.

47.     According to the false statements about and from Mr. Messi contained in Mas+ Co.'s advertising, Mr. Messi was intimately involved with the creation, design and development efforts as to the overall look and naming of the MÁS+ BY MESSI Product. (*See* **Exhibit B**, Mas+ Website, Founder's Story, accessed on October 9, 2025, https://www.masbymessi.com/pages/founders-story).

48.     According to a quote from Mr. Messi published on the Mas+ Website, he was the individual who named the MÁS+ BY MESSI Product. (Ex. B, emphasis added; ("That's why **I**

**named it Más+**. It means 'more' in Spanish. The + stands for even more positivity. Because in every part of my life, I always think and act positively.")).

49.     Further, the Mas+ Website includes another quote from by Mr. Messi where he states "after I spent time searching but I just couldn't find one [sports drink] with both amazing taste and the right ingredients. So, I went to work on a drink of my own." (Ex. B).

50.     According to the false advertising on the Mas+ Website, Mr. Messi personally directed the design effort as to the look of the MAS+ BY MESSI Products before they were introduced into the marketplace. (Ex. B).

51.     The Mas+ Website falsely identifies Mr. Messi as "The Founder" of Mas+ Co. and publishes multiple quotes from Mr. Messi, hailing his involvement in the development of the hydration drink.

52.     The Mas+ Website also promotes a video titled "Why I Did This." (**Exhibit C,** embedded on the Mas+ Website (https://www.masbymessi.com/pages/founders-story)). The video is also available on YouTube (https://www.youtube.com/watch?v=N-UjcP9QeYU).

53.     In the "Why I Did This" marketing video, Mr. Messi states that he affirmatively chose the bottle and can used for the MÁS+ BY MESSI Products. (Ex. C at timestamp 0:30 ("[c]hoosing the bottle, the can. It was very special")).

54.     The "Why I Did This" marketing video continues the false narrative stating that "[Mr. Messi] was involved throughout the whole Mas+ process." (Ex. C at timestamp 0:30).

55.     Mr. Messi and/or his agents reviewed and approved Mas+ Co.'s use, marketing, distribution and publication of the false statements summarized above in Paragraphs 43-54.

56.     In addition to the false advertising on the Mas+ Website, on information and belief, Mas+ Co. knew that to be successful, it must also sell its distributors and retailers on the prospect

of the MÁS+ BY MESSI Product and its association with Mr. Messi. On information and belief, Mas+ Co. has spread this same known false narrative regarding Mr. Messi's so-called involvement and "founding" to prospective and current distributors and retailers of the MÁS+ BY MESSI Product.

**Defendants' Have Admitted Their Advertising is False.**

57.     The marketing statements and/or quotes from Mr. Messi summarized above in Paragraphs 43-54 are false (collectively, the "Mas+ False Advertising").

58.     On July 11, 2025, Mr. Messi executed under the penalty of perjury a declaration in which he testified as to how he came to be involved with the MÁS+ BY MESSI Product (the "Messi Declaration"). (**Exhibit A**, Declaration of Lionel Messi with certified translation on pp. 10-19).

59.     On July 11, 2025, Pablo Negre Abello executed under the penalty of perjury a declaration in which he testified, amongst other things, about Mr. Messi's lack of involvement with Mas+ Co. and the MÁS+ BY MESSI Product (the "Negre Declaration"). (**Exhibit D**, Declaration of Pablo Negre Abello).

60.     Mr. Negre has been the marketing and commercial manager for Lionel Messi's name, image, and likeness rights since 2009. As Mr. Messi's marketing and commercial manager, he is responsible for managing most or all of Mr. Messi's commercial endorsements and sponsorships, including the use of his trademarks and image. (Ex. D, Negre Declaration at ¶¶ 4-5.)

61.     On July 14, 2025, Montserrat Trapé executed a declaration under penalty of perjury in which she testified, amongst other things, as to Mr. Messi's lack of involvement with Mas+ Co.

and the MÁS+ BY MESSI Product (the "Trapé Declaration"). (**Exhibit E**, Declaration of Montserrat Trapé).

62.     Ms. Trapé is an attorney and advisor at Grupade S.L., a law firm based in Barcelona, Spain. Ms. Trapé's current role for Mr. Messi's management team includes assisting with contract negotiations, liaising between others on Mr. Messi's management team and Mr. Messi's various commercial partners concerning contractual and financial issues, helping resolve any problems concerning such relationships, and helping ensure that all requirements of Mr. Messi's business relationships are fulfilled. (Ex. E, Trapé Declaration at ¶ 1 and ¶ 5.)

63.     In the Messi Declaration, Mr. Messi extensively detailed his lack of involvement in the creation, development, design and naming of the MÁS+ BY MESSI Product. (Ex. A).

64.     Mr. Messi declares that in late 2023, he travelled to Mark Anthony's production facility "to taste the flavors **Mark Anthony had developed** for the product, see the brand concept, and view a presentation about the proposed product." (Ex. A at ¶ 13, emphasis added.)

65.     As such, Mr. Messi readily admits that neither he (nor his team) selected formulas, ingredients or even which flavor profiles to address, as the product flavors had already been developed by Mark Anthony. (Ex. A at ¶ 13).

66.     Mr. Messi further declared that he "was **not involved** in the creation or design of the aesthetic appearance of the bottle or the label, and [he has] **no knowledge** as to the specifics of that design process." (Ex. A at ¶ 19, emphasis added).

67.     Mr. Messi also confirmed that he neither "designed [n]or contributed in any way to designing the visual appearance of MÁS+ BY MESSI products." (Ex. A at ¶ 21).

68.     In another public filing in an ongoing litigation, Mr. Messi reiterates that "the first time [Mr. Messi] even saw the packaging was on December 1, 2023, after it was designed." (**Exhibit F**, September 9, 2025 Court Filing.)

69.     Notably missing from Mr. Messi's declaration are any claims, attestations or factual support that he "spent time searching" for a drink "with both amazing taste and the right ingredients." Similarly, there are no claims, attestations or factual support that Mr. Messi could not find one, so that he "went to work on a drink of [his] own"— as falsely stated on the Mas+ Co. website and the Mas+ Co. Commemorative Launch Pack. There are also no facts or evidentiary support in that declaration as to how Mr. Messi "founded" or was the "founder" of Mas+ Co. or the MÁS+ BY MESSI Product.

70.     Despite the attributed quotes and false statements on the Mas+ Co. website, Mr. Messi and his "management team **was not involved** in the design of the look and feel of the MÁS+ BY MESSI product, which I understand was handled by Mark Anthony prior to pitching the product to Mr. Messi's team." (Ex. E, ¶ 9, Trapé Declaration, emphasis added.) Rather, the name and already-designed bottle design were created solely by Mark Anthony and then presented to him. (Ex. D, ¶ 10, Negre Declaration.)

71.     The true nature of Mr. Messi's involvement in the development of the MÁS+ BY MESSI Product, as detailed in the Messi Declaration, Trapé Declaration, Negre Declaration and Mr. Messi's September 9, 2025 Court Filing directly contradicts the demonstrably false advertising and marketing campaign that Defendants published to distributors, retailers and consumers.

72.     Contrary to the Mas+ Co. public advertisement and website promotion, Mr. Messi did not go "to work on a drink of [his] own." (Ex. B). Rather, on information and belief, Mr. Messi attended at most two presentations made by Mas+ Co. and/or its affiliates and then licensed his

name, image, signature and likeness. This is vastly different than the false narrative that is being publicly marketed to increase sales of the MÁS+ BY MESSI Product to the detriment of Prime Hydration.

73.     On information and belief, that false narrative has been material to the purchasing decisions of distributors, retailers and/or consumers of the MÁS+ BY MESSI Product, in that those consumers would either not have purchased, or would have been less likely to purchase, the MÁS+ BY MESSI Product in the absence of the false narrative about Mr. Messi's "founding" and direct involvement in the creation, design, development and naming of the product.

74.     As confirmed in the Messi and Negre Declarations, Mr. Messi did not design the bottle used for the MÁS+ BY MESSI Product, and he was not involved throughout the "whole Mas+ process," as is falsely attributed to him by Mas+ Co. (Ex. C at timestamp 0:30).  Rather, that process was started and completed before Mr. Messi was ever involved.

75.     In addition, as again confirmed in the Negre Declaration, Mr. Messi did not give the MÁS+ BY MESSI Product its name "Mas+," as is falsely advertised on the Mas+ Website. (Ex. B). It was Mark Anthony and/or Mas+ Co. that created that name.

76.     Notably, an application for the MAS+ trademark is pending with the United States Patent and Trademark Office under Application No. 79/388,826 indicating the current owner to be Mark Anthony International SRL without any mention or assignment of rights from Mr. Messi.

77.     Similarly, an application for the MAS+ BY MESSI trademark is registered with the United States Patent and Trademark Office under U.S. Registration No. 7,676,745 indicating the current owner to be Mark Anthony International SRL.

**Defendants' False Advertising Continues**

78.     Despite Mas+ Co.'s knowledge of the Messi Declaration and Mr. Messi's sworn statements therein, Defendants continue to promulgate the false advertising about Mr. Messi's involvement with the MÁS+ BY MESSI Product on the Mas+ Website and, on information and belief, via other outlets including social media and directly to distributors and retailers.

79.     Mas+ Co. continues to market, distribute and sell the MÁS+ BY MESSI Product based on the admittedly false advertising.

80.     In addition, although Mr. Messi is aware that the Mas+ Website contains false statements attributed to him, on information and belief, Mr. Messi and/or his representatives have taken no action to correct those false statements or otherwise have them removed from the Mas+ Website. Rather, they have permitted the blatantly false advertising to continue despite Mr. Messi admitting that he has ultimate control over the "uses of Mr. Messi's name, image, signature, quotes, and flavor names." (Ex. F)

81.     The failure to alter or correct the statements is, on information and belief, willful and intentional, as the Mas+ Website has been repeatedly modified since the first publication of the false statements attributed to Mr. Messi.

82.     Rather than correct the falsehoods on the Mas+ Website, on information and belief, the primary concern of Mas+ Co. and Mr. Messi is to grow the sales of the MÁS+ BY MESSI Product.  On information and belief, Mas+ Co. and Mr. Messi know that the only way to continue growing the sale of the MÁS+ BY MESSI Product is to continue promulgating the admittedly false narratives included within the Mas+ False Advertising.

**Prime Hydration Has Been Damaged by Defendants' False Advertising**

83.     Defendants' false narrative and associated advertising has harmed Prime Hydration at least that Prime Hydration has lost retail shelf space and slotting positions at retailers throughout the United States such as Walmart, amongst others.

84.     Indeed, on information and belief, Defendants' false marketing caused retailers to alter planograms and/or product placement to include MAS+ BY MESSI Product outside of the normal "reset" or "refresh" cycle to the detriment of Prime Hydration.

## FIRST CAUSE OF ACTION

### (False Advertising Against Defendants Under the Lanham Act 15 U.S.C. § 1125(a))

85.     Prime Hydration realleges and incorporates herein the allegations contained in Paragraphs 1- 84 herein.

86.     In the course of commercially promoting and advertising the MÁS+ BY MESSI Product, Defendants have misrepresented that the MÁS+ BY MESSI Product was created, developed, designed and named by Mr. Messi.

87.     As summarized above, these statements are false and/or materially misleading.

88.     Notwithstanding Defendants' knowledge that the Mas+ Co. advertising and marketing are false and/or materially misleading, Defendants continue to promulgate this false advertising campaign for the purpose of influencing consumers, distributors and retailers, to entice them to continue purchasing the MÁS+ BY MESSI Product.

89.     The foregoing conduct by Defendants is false and misleading, as confirmed by the Messi Declaration that directly contradicts Defendants' false advertising.

90.     Defendants' false and/or materially misleading advertising has been successful in causing distributors, retailers and/or consumers to distribute and/or purchase the MÁS+ BY

MESSI Product, or to become significantly more likely to purchase the MÁS+ BY MESSI Product than those distributors, retailers and/or consumers would otherwise have distributed and/or purchased had Defendants not engaged in this false advertising.

91.     As a result of the improper, false, and misleading advertising by Defendants, consumers and distributors have purchased the MÁS+ BY MESSI Product instead of Prime Hydration's own competing products. If Defendants did not market the MÁS+ BY MESSI Product through the use of Mas+ Co.'s false advertising, on information and belief, Defendants would not sell as many products and a portion of that sales volume would be maintained by Prime Hydration.

92.     As a result of the improper, false, and misleading advertising by Defendants, Prime Hydration has lost sales and been damaged, in an amount to be determined at trial. Further, Prime Hydration will continue to lose future sales if Defendants' false and misleading advertising is not enjoined by this Court.

## SECOND CAUSE OF ACTION

### (Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201)

93.     Prime Hydration realleges and incorporates herein the allegations contained in paragraphs 1-92 herein.

94.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., et seq. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat.§ 501.202(2).

95.     Section 501.204(1), Fla. Stat., declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

96.     501.203(3)(c) makes any violation of "any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" a violation of this Act.

97.     The FDUTPA prohibits false and misleading advertising.

98.     Defendants have violated the FDUTPA, as detailed herein, by promulgating a known, false narrative regarding the origin and founding of Mas+ Co. and its MÁS+ BY MESSI Product, to trick consumers and distributors into buying products from Defendants. These false statements were made with the intent to deceive and/or cause a likelihood of a misunderstanding as to the founding of Mas+ Co. and the creation, development, design, naming, and source and/or origin of the MÁS+ BY MESSI Product.

99.     Defendants' acts constitute unlawful and unfair competition in violation of FDUTPA, in that such acts were and are unlawful, unfair, deceptive, and/or fraudulent business acts.

100.    Defendants have unjustly gained revenue and profits by virtue of their wrongful acts that they otherwise would not have obtained and to which they are not entitled.

101.    As a result of Defendants' deceptive and unfair trade practices, consumers and distributors have purchased the MÁS+ BY MESSI Product instead of Prime Hydration's products. Defendants' deceptive and unfair trade practices have caused Prime Hydration to lose retail floor and shelf space for its competitive products, as well as sales of its competitive products. Prime

Hydration will continue to lose future retail floor and shelf space and sales of its competitive products if Defendants' deceptive and unfair trade practices are allowed to continue.

102.    Defendants' statutory violations and other wrongful acts have injured and threaten to continue to injure Prime Hydration, including loss of customers, dilution of goodwill, and confusion of existing and potential customers.

## THIRD CAUSE OF ACTION

### (Misleading Advertising in Violation of Fla. Stat. § 817.41)

103.    Prime Hydration realleges and incorporates herein the allegations contained in paragraphs 1-102 herein.

104.    Defendants' acts of promulgating a false narrative regarding the founding of Mas+ Co. and the creation, development, design, naming, and source and/or origin  of the MÁS+ BY MESSI Product, as described herein, have misled potential and existing customers into believing that Mr. Messi was an integral part of the formation of Mas+ Co and the entire process of the creation, design, development and naming of the MÁS+ BY MESSI Product. This is a misrepresentation of material facts.

105.    Through these knowingly false and misleading statements, which include, but are not limited to, false statements on the Mas+ Website, Defendants have made and continue to make misleading statements.

106.    Defendants knew or should have known of the falsity or misleading nature of these misrepresentations.

107.    Defendants intended to and did induce customers to rely on and act on these misrepresentations.

108.    Defendants' misconduct was willful, intentional, and deliberate.

21

109.    As a direct and proximate result of Defendants' false and misleading advertisements, Prime Hydration, as Mas+ Co.'s competitor, has suffered and will continue to suffer economic losses and irreparable injuries.

## PRAYER FOR RELIEF

WHEREFORE, Prime Hydration prays that this Court enter judgment against Defendants as follows:

A.     That Prime Hydration be awarded damages, including its lost profits;

B.     That Defendants and all their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them, be preliminarily and permanently enjoined and restrained from, directly or indirectly:

1.     Marketing the MÁS+ BY MESSI Product with false advertising that would include, but is not limited to, statements that: (i) Mr. Messi founded the company, or is the "founder" of the MÁS+ BY MESSI Product or its related brand; (ii) Mr. Messi was involved throughout the process of creating, designing and/or developing the MÁS+ BY MESSI Product; (iii) Mr. Messi had any role in designing the MÁS+ BY MESSI Product and/or its packaging; and/or (iv) Mr. Messi created and named the MÁS+ BY MESSI Product; and

2.     Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above sub-paragraph 1;

C.     That Prime Hydration be awarded damages in an amount to fully compensate it for all corrective advertising necessitated by Defendants' acts of deceptive business practices and false advertising;

D.     That this case be declared exceptional pursuant to 15 U.S.C. § 1117(a), at least in part due to Defendants' willful and intentional dissemination of false and misleading statements,

knowingly and falsely made in Defendants' commercial advertising and promotion of their products, and that Prime Hydration therefore be awarded its reasonable attorney's fees;

E.      That Prime Hydration further be awarded its costs, attorneys' fees and expenses in this suit under Fla. Stat. § 501.2105, and Fla. Stat. § 817.41(6);

F.      That Prime Hydration be awarded punitive damages in an amount sufficient to deter the re-occurrence of Defendants' willful, intentional, and deliberate acts in the future, pursuant to Fla. Stat. § 817.41(6);

G.      That Prime Hydration be granted prejudgment and post-judgment interest; and

H.      That Prime Hydration be granted such further relief as the Court may deem just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Prime Hydration demands a trial by jury on all issues so triable.

Dated: October 9, 2025.

**GREENBERG TRAURIG**

By*: /Joshua R. Brown*
Joshua R. Brown, BCS, *Lead Trial Counsel*
Florida Bar No. 826391
brownjr@gtlaw.com
GREENBERG TRAURIG, P.A.
450 S. Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone No. (407) 420-1000

Herbert H. Finn
*(Pro Hac Vice Applications Forthcoming)*
GREENBERG TRAURIG, LLP
360 N. Green St., Suite 1300
Chicago, IL 60607
Tel: 312-456-8400
finnh@gtlaw.com

*Attorneys for Plaintiff Prime Hydration LLC*